CORNING & CO. v. ABBOTT & CO.

Sales of intoxicating liquors, if made in this state since the act of 1855, will be presumed to be illegal and void until the vendor's authority to sell is shown.

But if such sale is made in another state, the presumption will be that the sale is legal until it is shown to be otherwise.

A sale of spirituous liquors without license from the United States government is not void.

Information and belief on the part of a vendor of spirituous liquors, that the purchaser was intending to sell the same contrary to law, does not invalidate the sale.

The plaintiffs will not be affected by any secret understanding or agreement between partners, not known to the plaintiffs, limiting the general powers of either partner.

Assumpsit, to recover for a bill of liquors, amounting to $193.16, alleged to have been sold and delivered by the plaintiffs to the defendants, at Cleveland, Ohio, on March 25, 1870. The plaintiff Warren H. Corning is a wholesale liquor dealer, doing business under the name of Corning & Co. at said Cleveland. The defendants are Josiah Abbott, of Stewartstown in Coös county, and Asa T. Barron, of Hartford, Vt., and it appeared that they had a store at said Stewartstown, where they carried on as co-partners the business usually done in country stores, said store and business being under the personal charge and management of Abbott. A few days before March 25, 1870, one Hunt, an agent of the plaintiff, called on Abbott, at Stewartstown, and solicited from him an order for liquor, and Abbott gave him an order for the liquors charged in the bill, on behalf of the firm of J. Abbott & Co., and in their name, and said order was forwarded by said Hunt to the plaintiff at Cleveland. The course of the plaintiff's business was to examine orders so procured and sent in by his agent, and fill such as were approved by him. Upon receiving the order of Abbott & Co., the plaintiff delivered the liquors to a carrier at Cleveland, and they were forwarded, and afterwards received by the defendants at Stewartstown, who paid the freight through from Cleveland.

The defendants moved for a nonsuit, (1) because there was no evidence that the sale was made in Ohio; (2) because there was no

evidence that the sale, if made in Ohio, was legal there. The court overruled the motion, and the defendants excepted.

The defendants offered to prove that the plaintiff knew at the time of the sale that the defendants intended to resell the liquor in violation of the law of New Hampshire. The court excluded the evidence, and the defendants excepted.

The defendant Barron offered to prove that it was agreed between himself and his partner Abbott that intoxicating liquor should not be bought or sold in their business at Stewartstown; that the plaintiff knew, at the time of the purchase, that the purchase was made for the purpose of illegally selling the liquor, and that Barron, as matter of fact, never had any knowledge of the purchase or sale of liquor by Abbott, and never authorized or consented to such purchase or sale.

The court held this evidence to be immaterial, unless it were shown that the plaintiff had notice or knowledge of such agreement between the defendants. To this ruling the defendants excepted; and thereupon a verdict was taken by consent for the plaintiff, and the questions of law were reserved.

*H. Bingham*, for the plaintiffs.

*Carpenter* and *Spring*, for the defendants.

SARGENT, C. J. The first question raised in this case seems to be settled by numerous authorities in this state. The sale was completed when the goods were delivered, after the plaintiffs had considered and accepted the proposition of the defendants to purchase liquors of them. Such acceptance of the proposition and such delivery were in Ohio, and there was where the sale was consummated. *Boothby* v. *Plaisted*, 51 N. H. 437, and cases cited.

The second point also seems to be decided in *Doolittle* v. *Lyman*, 44 N. H. 611, where it is said by BARTLETT, J.,—"If it appeared that the defendants' note was given in part for intoxicating liquor sold by them in this state since the act of 1855 took effect, it was incumbent on them to show that they were legally authorized to make the sale, in in order to establish the validity of the note. *Bliss* v. *Brainard*, 41 N. H. 256. If the defendant claimed that Barnard's note, being given for intoxicating liquor sold in Massachusetts, was founded upon an illegal consideration, they should have proved the law of Massachusetts, which they claimed rendered the sale illegal, if the inquiry became material. *Ferguson* v. *Clifford*, 37 N. H. 98."

An account for spirituous liquors sold and delivered, where the sale and delivery are proved, is as good as a note admitted to be given for such liquors. Spirituous liquors are property, and may, under some circumstances, be dealt in legally. Formerly the sale of such liquors was as legal and as common in this state as the sale of flour and of sugar, and in some states and countries it is so now,—while other states have special statutes forbidding the sale, except for some particular

purposes. The presumption should be, where a sale of spirituous liquors was made in another state or country, that the same was legal until something is shown to impeach it.

We may presume that the rules of the common law are the same in another country as in our own in the absence of all proof; but when we come to the subject of liquor laws, we know that hardly any two states have a similar law, and that no one state has had the same law for any considerable time. In such a case, we cannot very well make presumptions without proof. Trades made in other states or countries, which appear *bona fide* and proper on their face, will be presumed to be legal until the contrary is proved.

It is also claimed that we should presume all sales of liquors void until we have proof that the vendor had paid his special tax and obtained his license, as required by the law of the United States. We do not understand that this was the design or is the effect of this law. Its design was to make the man who sells contribute to the revenue of the government, and not to prohibit sales of liquors. It makes the vendor liable to a fine for selling without a license, but it does not prohibit the sale. It does not make void a sale, if made by one having no license, and thus in effect punish the purchaser as well as the vendor, but it simply punishes the man who sells without a license, in order to make him buy his license, and thus contribute his proportion to the public revenue. This exception must be overruled.

The fact, that the plaintiffs were informed or believed that the defendants were intending to sell the liquors in violation of the laws of New Hampshire, at the time of the sale, has been held not to avoid the sale. *Hill* v. *Spear*, 50 N. H. 253.

The defendants had a store at Stewartstown, N. H., where they as partners carried on a business such as is usually done in country stores, all which business was entrusted to Abbott, who had the personal charge and oversight and management of the same. He bought the goods and he superintended the sales, and appeared to be, and in fact was, the business man of the firm. There is nothing in the case tending to show that the plaintiffs had any knowledge or notice of any restriction upon Abbott's authority to buy anything that might legally be bought as an article of trade or commerce. In fact, under the ruling of the court, it is assumed that the plaintiffs had no such knowledge.

If a sale of liquors to both defendants, with knowledge that they intended to sell the same contrary to law, would not invalidate the sale, but the same would be legal and binding, it is difficult to see how the result would be changed if the liquors were sold to one member of the firm for the firm. The plaintiffs could not be affected by any secret understanding or agreement between the partners, but not known to them, so long as the active partner claimed or assumed to be acting for the firm in doing an act which the firm might clearly do.

*Judgment on the verdict.*